Michael VAUGHN, Appellant,

v.

MISSOURI DEPARTMENT OF SOCIAL SERVICES, DIVISION OF FAMILY SERVICES, Respondent.

No. ED 84172.

Missouri Court of Appeals,
Eastern District,
Division One.

April 19, 2005.

Richard J. Magee, The McAuliffe Law Firm, L.L.P., St. Louis, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Alana M. Barragan–Scott, Assistant Attorney General, Jefferson City, MO, for respondent.

GARY M. GAERTNER, SR., Presiding Judge.

Appellant, Michael Vaughn ("Vaughn"), appeals the decision of the Circuit Court of St. Louis County finding there was probable cause that Vaughn neglected Carlos Strickland ("Strickland"). Affirmed.

Vaughn began his employment with the St. Louis County Juvenile Court in June of 1988. On June 9, 2002, Vaughn was working a double shift at the juvenile detention center located in St. Louis County. On that day, he was working as a deputy juvenile officer assigned to Unit G. There were six juveniles in Unit G at that time. Four of the juveniles, including Strickland, were in their rooms, while one juvenile was temporarily housed at the front desk. Vaughn testified that it is standard procedure to lock the doors to the rooms of the juveniles in Unit G once they are returned to their rooms.

At about 1:45 p.m., Strickland, who was fifteen years old at the time, attempted suicide by jamming a Bible and a hardback book in his window, and then wrapping some clothes around the books and his neck. He tied his arms behind his back, and tied his legs to the bed. Strickland then jumped off his bed, causing him to hang by his neck. While Vaughn was in the course of returning juvenile Jimmie Blackmon ("Blackmon") to his room, Vaughn walked past Strickland's room and saw Strickland hanging from the window with clothes around his neck. Vaughn opened the door to Strickland's room, and then told Blackmon to get Strickland

down. Blackmon tried but could not get Strickland down. While Blackmon was attempting to help Strickland, Vaughn left the room and called the front desk for help. Vaughn then waited for deputy juvenile officers Christopher Jost ("Jost") and Tim King ("King") to arrive before returning to Strickland's room. Jost and King entered Strickland's room and cut the clothing tied around the books and Strickland's neck which allowed them to get Strickland down.

Subsequent to this incident, Strickland was sent to the psychiatric unit of St. John's Hospital, where he stayed from June 9, 2002 until June 18, 2002 at which time he returned to the detention facility. Respondent, The Department of Social Services, Division of Family Services ("DFS"), received a hotline report of neglect on or about June 21, 2002 concerning the June 9, 2002 incident. Following an investigation completed pursuant to sections 210.110–210.165 RSMo 2000,[1] DFS determined that there was probable cause to find Vaughn neglected Strickland. At Vaughn's request, the Child Abuse and Neglect Review Board ("the Board") performed a review of that investigation. The Board upheld the probable cause finding.

On February 6, 2003, Vaughn filed a petition, pursuant to section 210.152, in the Circuit Court of St. Louis County seeking *de novo* review of the Board's decision. After a bench trial, the circuit court entered its judgment in favor of DFS finding there was probable cause of neglect. Vaughn subsequently filed a motion for new trial, or, in the alternative, motion to amend the judgment, which was denied by the court. This appeal followed.

■ The trial *de novo* in the circuit court, although in theory an appeal of the administrative hearing, is an original proceeding and is not an exercise of review jurisdiction. *Petet v. State, Dept. of Social Services,* 32 S.W.3d 818, 821 (Mo.App. W.D.2000), *quoting Jenkins v. Director of Revenue,* 858 S.W.2d 257, 260 (Mo.App. W.D.1993). Thus, we review the decision of the circuit court rather than the decision of DFS. *Petet,* 32 S.W.3d at 821–22. We will uphold the circuit court's decision unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declare or applies the law. *Lipic v. State,* 93 S.W.3d 839, 841 (Mo.App. E.D.2002).

■ In his only point on appeal, Vaughn argues that the circuit court erred in finding that there was probable cause of neglect. Vaughn argues that in responding to the suicide attempt of Strickland, he followed the facility's "check, call, and care" procedure, and provided the proper care necessary for Strickland's well-being.

Section 210.110 sets forth the following definitions:

(9) "Neglect", failure to provide, by those responsible for the care, custody, and control of the child, the proper or necessary support, education as required by law, nutrition or medical, surgical, or any other care necessary for the child's well-being;

(10) "Probable Cause", available facts when viewed in the light of surrounding circumstances which would cause a reasonable person to believe a child was abused or neglected;

■ The definition of neglect is not applicable exclusively in family situations, but is intended to be applicable to anyone who has responsibility for the care of the child. *Doe v. Dept. of Social Services,* 71 S.W.3d 648, 650 (Mo.App. E.D.2002).

---

1. All statutory references are to RSMo 2000 unless otherwise indicated.

John Snipes, the assistant superintendent of detention, testified that when there is an emergency medical situation, as in this case, the juvenile officers are trained to "check the scene making sure there are no other incumbent dangers, call for help, and then go to assist until help arrives." Vaughn claims that he provided the proper care necessary for Strickland's well-being, because, in compliance with the emergency medical procedure juvenile officers are supposed to follow, he checked the scene, called for help, and then assisted Strickland.

There is evidence that when Vaughn first checked on Strickland he threw water on Strickland's face, and then remarked, "See, there's nothing wrong with him. He's okay." Vaughn then proceeded to leave Strickland's room while Blackmon, who is only five foot two and a half inches tall, was struggling to assist Strickland. Vaughn had on his person a personal alarm that, if pressed, was supposed to activate a loud siren and indicate to the front desk that there was an emergency in Unit G. This personal alarm was never used by Vaughn on the day in question. Instead of activating the alarm, Vaughn went to a nearby office and called the front desk to report the emergency. After calling the front desk, Vaughn did not immediately go back to Strickland's room. He waited approximately two minutes for Jost and King to arrive before returning to Strickland's room. Once Jost, King, and Vaughn returned to Strickland's room, there is evidence that Vaughn still did not physically help to get Strickland down. In fact, there is evidence indicating that Vaughn never physically assisted Strickland. Taking all of this evidence into consideration, we find that the circuit court's finding of probable cause of neglect by Vaughn was supported by substantial evidence. Point denied.

Based on the foregoing, we affirm the judgment of the circuit court.

SHERRI B. SULLIVAN, J. and PATRICIA L. COHEN, J., concur.